1  David C. Scheper (SBN: 120174)
2  DScheper@winston.com
3  Gregory A. Ellis (SBN: 204478)
   gaellis@winston.com
4  **WINSTON & STRAWN LLP**
5  333 S. Grand Avenue
   Los Angeles, California 90071-1543
6  Telephone:  (213) 615-1700
7  Facsimile:  (213) 615-1750

8  Attorneys for Plaintiff
   BANC OF CALIFORNIA, N.A.

9

10              UNITED STATES DISTRICT COURT

11        CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

12

| | |
|---|---|
| BANC OF CALIFORNIA, N.A., | Case No. 8:22-cv-02015 |
| Plaintiff, | |
| v. | **COMPLAINT FOR:** |
|  | **(1)   BREACH OF CONTRACT;** |
| PLANET HOME LENDING, LLC; SPROUT MORTGAGE CORPORATION; SPROUT MORTGAGE, LLC; SPROUT MORTGAGE ASSET TRUST; RECOVCO MORTGAGE MANAGEMENT, LLC; and MICHAEL J. STRAUSS, an individual, | **(2)   BREACH OF FIDUCIARY DUTY;** |
|  | **(3)   VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200;** |
|  | **(4)   BREACH OF CONTRACT;** |
|  | **(5)   BREACH OF CONTRACT;** |
| Defendants. | **(6)   DECLARATORY RELIEF; AND** |
|  | **(7)   BREACH OF GUARANTY** |

       Plaintiff, BANC OF CALIFORNIA, N.A. ("Banc"), complains and alleges as follows:

**PARTIES**

1. Banc is, and at all times mentioned herein has been, a national banking association, organized and existing under the laws of the United States and authorized to conduct business in the State of California. Banc's main office is located in Santa Ana, California.

2. Banc is informed and believes, and thereon alleges, that Defendant Planet Home Lending, LLC ("Planet") is, and at all times mentioned herein has been, a Delaware limited liability company with a principal place of business in Connecticut, that does business in the State of California.

3. Banc is informed and believes, and thereon alleges, that Defendant Sprout Mortgage Corporation ("Sprout Corporation") is, and at all times mentioned herein has been, a Delaware corporation with a principal place of business in Texas that does business in the State of California.

4. Banc is informed and believes, and thereon alleges, that Defendant Sprout Mortgage, LLC ("Sprout LLC") is, and at all times mentioned herein has been, a Delaware limited liability company with a principal place of business in Florida, that does business in the State of California. As discussed in further detail *infra*, Sprout LLC entered into a Deposit Account Agreement ("Deposit Agreement"), which includes a "Dispute Resolution" provision providing in part that "[v]enue for any action brought in accordance with this provision shall be in the State of California, County of Orange." Orange County is located in this District. The Deposit Agreement is discussed in more detail below and is attached as an exhibit hereto.

5. Banc is informed and believes, and thereon alleges, that Defendant Sprout Mortgage Asset Trust ("Sprout Asset Trust") is, and at all times mentioned herein has been, a Delaware statutory trust, with a last known principal place of business in New York, that does business in the State of California.

6. Banc is informed and believes that Recovco Mortgage Management, LLC ("Recovco") is a Delaware limited liability company with a principal place of business

in Texas, that does business in the State of California. Sprout Corporation, Sprout LLC, Sprout Asset Trust, and Recovco may be referred to collectively herein as "Sprout."

7. Banc is informed and believes, and thereon alleges, that Defendant Michael J. Strauss ("Strauss" or "Guarantor") is an individual who currently, and at all times mentioned herein, does business in the State of California. On information and belief, Strauss resides in Southampton, New York. On November 24, 2021, Strauss executed a personal guaranty ("Guaranty") in favor of Banc providing that "[i]f there is a lawsuit, Guarantor agrees upon [Banc's] request to submit to the jurisdiction of the courts of Los Angeles County, State of California." Los Angeles County is located within this District. The Guaranty is discussed in more detail below and is attached as an exhibit hereto.

8. Banc is informed and believes, and thereon alleges, that Defendants are, and at all times mentioned herein have been, the agents, principals, partners, co-conspirators, and/or co-venturers of each other, that each such Defendant acted within the course, scope, and authority of said relationship, and that, as a result, said Defendants are jointly and severally liable for the acts alleged herein.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a), based on complete diversity of citizenship between Plaintiff and Defendants, *supra* ¶¶ 1-7, and because the amount in controversy exceeds $75,000.00.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District. In addition, each Defendant does business in this District and/or has agreed to submit to the jurisdiction of the courts of this District.

## THE ATAIDE AND TOPPS NOTES

11. Banc is the owner and funder of two notes—one dated February 19, 2020 designating Craig Ataide as the primary borrower (the "Ataide Note") and the other dated March 10, 2020 designating Raymond Topps as the primary borrower (the "Topps

Note"). Pursuant to the February 26, 2018 version of the Master Repurchase Agreement discussed in further detail *infra*, Banc purchased the Ataide Note and the Topps Note from Sprout Corporation, Sprout Asset Trust, and/or Recovco, each of which is identified as "Sellers" in the Master Repurchase Agreement, on or about August 21, 2020 and March 18, 2020, respectively. Sprout retained servicing responsibilities over the two Notes, and pursuant to the Subservicing Agreement discussed in further detail *infra,* Planet serviced both Notes on behalf of Sprout for the benefit of Banc. Strauss executed a personal guaranty in Banc's favor for Sprout's liabilities.

12. The Ataide Note was liquidated via refinance and the Topps Note was foreclosed upon. In early August 2022, Planet received the funds from the reconciliation of the refinance of the Ataide Note as well as the proceeds from the foreclosure sale of the Topps Note. Because Banc owned and funded the two Notes, the proceeds from the liquidation of the Notes rightfully belong to Banc.

13. Despite multiple requests from Banc, neither Planet nor Sprout have remitted to Banc (1) the funds from the reconciliation of the Ataide Note refinance and/or (2) the proceeds from the foreclosure of the Topps Note. A true and correct copy of correspondence between Banc, Planet, and Sprout regarding the Ataide and Topps Notes is attached hereto as Exhibit 1 and incorporated herein by this reference.

## THE SUBSERVICING AGREEMENT

14. On September 4, 2019, Planet entered into a Subservicing Agreement with Sprout. The Subservicing Agreement covers the Ataide and Topps Notes. A true and correct copy of the Subservicing Agreement is attached hereto as Exhibit 2 and incorporated herein by this reference.

15. The Subservicing Agreement provides that Sprout "owns the right to service the Mortgage Loans" and Planet "has the capacity to service said Mortgage Loans." Ex. 2 at 1. The Subservicing Agreement confirms Planet's obligation to act in the interests of "Investors," defined as "the owner of a Note," and thus covers Banc with

respect to the Ataide and Topps Notes. *Id.* at 5. The following sections set forth Planet's obligation to act in the interest of Banc:

- Section 2.4(d) requires Planet to maintain and carry all principal and interest payments "as 'trustee' for Investor." *Id.* at 14.

- Section 2.6 sets forth a series of additional servicing obligations Planet must fulfill, all of which are prefaced by noting that "Servicer shall be responsible for further safeguarding Investor's interest in each Mortgaged Property[.]" These obligations include, *inter alia*, securing vacant or abandoned property when a mortgagor ceases communicating with Planet (section 2.6(b)); and "assisting Investor or Owner in undertaking appropriate action to preserve Investor's security" in the event of liens, probate sales, condemnation, eminent domain or other legal process that could impair Investor's security (section 2.6(c)). *Id.* at 17-18.

- Section 2.16 states that, in the event title to a property securing a Note is acquired in foreclosure, "the deed or certificate of sale shall be taken in the name of Investor or its designee." Ex. 2 at 25.

16. Planet knows that the proceeds from the liquidations of the Ataide and Topps Notes belong to Banc. Banc sent Planet outgoing wire details confirming that Banc funded the Notes through its Warehouse Lending Division. Ex. 1 at 1-11 (email from Zoila Price to John Bosley dated August 24, 2022 attaching outgoing wire details). Banc also sent MERS information to Planet confirming that Banc funded the Notes. A true and correct copy of the MERS information is attached hereto as Exhibit 3 and incorporated herein by this reference. Planet has serviced these Notes for nearly two years and cannot dispute their provenance. Moreover, Sprout has admitted to Planet that these Notes were funded by Banc. Ex. 1 at 11-12 (email from Vinh Luu to Dawn Pawelczyk et al. dated August 11, 2022 "RE: Payment History Explanation-3rd Party FCL Sale/PIF").

**THE MASTER REPURCHASE AGREEMENT**

17. On February 26, 2018, Banc entered into a Master Repurchase Agreement with Sprout Corporation, Sprout Asset Trust, and Recovco. On November 23, 2021, Banc entered into a Master Repurchase Agreement with Sprout LLC and Sprout Asset

Trust with substantively identical terms as the February 26, 2018 version of the Master Repurchase Agreement. In each version of the Master Repurchase Agreement, Sprout requested that Banc "agree to purchase from time to time certain assets of [Sprout] consisting of Mortgage Loans." Banc purchased and funded the Topps and Ataide Notes pursuant to the Master Repurchase Agreement. A true and correct copy of the 2018 version of the Master Repurchase Agreement is attached hereto as Exhibit 4 and incorporated herein by this reference. A true and correct copy of the 2021 Master Repurchase Agreement is attached hereto as Exhibit 5 and incorporated herein by this reference.

18. The Master Repurchase Agreement further provides that interests in any "Purchased Repo Assets" belong to "Buyer" (i.e., Banc) as of the purchase date of each Note, further underscoring Banc's ownership interest in the funds from the reconciliation of the refinance of the Ataide Note and the proceeds from the foreclosure sale of the Topps Note. Ex. 4 at 27-31; Ex. 5 at 31.

19. Section 5(d) of the Master Repurchase Agreement obligates Sprout (as "Seller") to "account[] for all such Mortgage Loans, and the proceeds thereof and collections thereon, collecting all sums owing and to become owing thereon . . . including . . . to collect any sums or to enforce any rights with respect to security for the payment of any Mortgage Loans." Ex. 4 at 26; Ex. 5 at 28. The Master Repurchase Agreement allowed Sprout to delegate its servicing obligations, but Section 5(d) still obligates Sprout to "cause the Servicer to hold or cause to be held all escrow funds collected by Seller and Servicer with respect to any Purchased Repo Assets in trust accounts and shall apply the same for the purposes for which such funds were collected. Seller shall and shall cause the Servicer to deposit all collections received by Servicer on the Purchased Repo Assets in an account to be designated by Buyer upon an Event of Default." Ex. 4 at 26-27; Ex. 5 at 28-29. Of note, an "Event of Default" includes any breach of any covenant contained in the "Repurchase Facility Documents" that goes

uncured for 20 days (Ex. 4. at 45; Ex. 5 at 46); the Master Repurchase Agreement is included among the Repurchase Facility Documents.  Ex. 4. at 20; Ex. 5 at 19-20.

20. The Master Repurchase Agreement notes that in the Event of Default, Sprout is liable to Banc for "the amount of all legal or other expenses. . . incurred by Buyer in connection with or as a result of an Event of Default."  Ex. 4 at 47-48; Ex. 5 at 49-50.

21. Finally, the Master Repurchase Agreement created an obligation on the part of Sprout to service loans for the benefit of Banc, thus making Sprout an agent of Banc for servicing purposes.  Ex. 4 at 26-28; Ex. 5 at 28-29 (Section 5(d)).  The Master Repurchase Agreement gave Sprout the ability to delegate servicing obligations, which Sprout did—and which Planet willingly took on—via the Subservicing Agreement.  Thus, Planet is a subagent of Banc, owing fiduciary duties to Banc, including the duty to remit funds owed it.

## THE GUARANTY

22. On November 24, 2021, Strauss executed a personal guaranty in Banc's favor for Sprout's liabilities.  A true and correct copy of the Guaranty is attached hereto as Exhibit 6.  The Guaranty gives Banc a right to recover against Strauss for any obligation of Sprout, whether or not Banc has tried to seek redress against Sprout or any other party.  Ex. 6 at 1.  Specifically, the Guaranty provides:

> Guarantor jointly and severally and absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Obligations of Seller to Buyer, and the performance and discharge of all Seller's obligations under the [Master] Repurchase Agreement and the other Repurchase Facility Documents.  This is a guaranty of payment and performance and not merely of collection, so Buyer can enforce this Guaranty against Guarantor even when Buyer has not exhausted Buyer's remedies against anyone else obligated to pay the Obligations or against any collateral securing the Obligations, this Guaranty or any other guaranty of the Obligations.  *Id*. at 1.

23. Pursuant to the express provisions of the Guaranty, Strauss covenanted and unconditionally guaranteed that he would pay Banc the funds from the reconciliation of the refinance of the Ataide Note and the proceeds from the foreclosure sale of the Topps

Note, along with any other obligations of Sprout. The Guaranty does not require any pre-suit demand.

## DEFENDANTS OWE BANC OVER $1.5 MILLION ON THE TOPPS AND ATAIDE NOTES

24. As of September 23, 2022, the proceeds on the liquidation of the Topps Note and the Ataide Note, which belong to Banc for the reasons set forth in paragraphs 11 and 12 *supra*, are as follows:

| Ataide Note | $1,103,018.90 |
| Topps Note | $404,976.81 |
| **Total Amount Owed** | **$1,507,995.71** |

25. From August 2022 to present, no Defendant has sent Banc these amounts, despite several requests from Banc to Planet (which is currently holding the proceeds) and Sprout (which is obligated under the Master Repurchase Agreement to ensure that the proceeds are remitted to Banc). *See* Ex. 1.

## SEPARATE FROM THE TOPPS AND ATAIDE NOTES, SPROUT OWES BANC OVER TWO MILLION DOLLARS ON ITS WAREHOUSE LINE OF CREDIT

26. Pursuant to the Master Repurchase Agreement, Sprout regularly makes transactions on its warehouse line of credit with Banc.

27. Beginning in July 2022, Sprout's transactions have resulted in deficiencies, which Sprout has yet to repay.

28. Specifically, a purchase trade on July 28, 2022 resulted in a deficiency of almost $1.3 million in Banc's favor.

29. In the following week, Sprout incurred three more six-figure deficiencies on the warehouse line. Specifically, a purchase trade on August 1, 2022 resulted in a deficiency of over $600,000.00; a purchase trade on August 2, 2022 resulted in a deficiency of over $700,000.00; and a purchase trade on August 3, 2022 resulted in a deficiency of over $200,000.00.

30. Sprout managed to reduce some of the deficiencies, based on overages from purchase trades on July 29 and August 8, 2022, an escrow funds transfer, and by Banc drawing on Sprout's margin account, as it was entitled to do pursuant to the Master Repurchase Agreement. Even after these adjustments, Sprout currently owes a balance to Banc on the warehouse line in the amount of $2,043,490.52.

31. Sprout has failed to repay the deficiency, despite repeated demands from Banc to do so.

## **SPROUT LLC HAS FAILED TO INDEMNIFY BANC IN LITIGATION RELATING TO SPROUT LLC'S DEPOSIT ACCOUNT AT BANC.**

32. In connection with its warehouse line and the Master Repurchase Agreement, Sprout LLC opened a deposit account at Banc, with an account number ending in digits 2336. The deposit account is governed by Banc's Deposit Agreement, a copy of which is attached as Exhibit 7.

33. The Deposit Agreement includes a provision entitled "Conflicting Demands/Disputes" which applies "if a dispute arises over control of or access to your account[.]" Ex. 7 at 23. Under this provision, Sprout LLC "agree[s] to assume all liability for, and [Sprout LLC] agree[s] to indemnify, defend, and hold [Banc] harmless from and against any and all losses, damages, claims, costs or expenses (including attorneys' fees and costs) incurred by [Banc] as a result of any dispute that arises under this section." *Id.* at 23-24.

34. The Deposit Agreement also includes a provision entitled "Limitation of Liability; Hold Harmless and Indemnity," in which Sprout LLC "agree[s] that you will indemnify, defend, and hold harmless the Bank and our directors, officers, shareholders, employees and agents, from and against any and all suits, proceedings, claims, demands, causes of action, damages, expenses (including reasonable attorneys' fees and other legal expenses), liabilities and other losses that result from or arise out of: (a) the wrongful acts or omissions of you, or any person acting on your behalf . . . in connection with your use of your accounts or services we offer to you[.]" *Id.* at 27-28.

35. On or about October 6, 2022, PNC Bank, N.A. sued both Banc and Sprout LLC in an action entitled *PNC Banc, N.A. v. Sprout Mortgage, LLC, et al.*, Docket No. 0653697/2022, in the Supreme Court of the State of New York, New York County (the "PNC Action"). Banc was named in the PNC Action solely in its capacity as Sprout LLC's depository bank. With respect to the allegations involving Banc, PNC alleges that Sprout has wrongfully failed to remit servicing payments rightfully belonging to PNC, which funds are currently in a lockbox account Sprout holds at Banc. PNC seeks injunctive relief freezing the funds in the lockbox account.

36. Because Banc has been sued in the PNC Action over control of Sprout LLC's deposit account with Banc, and because PNC has alleged misconduct on Sprout LLC's part in connection with its use of the deposit account, the indemnification provisions of the Deposit Agreement apply, and Sprout LLC is obligated to indemnify and defend Banc in the PNC Action.

37. In addition to the above provisions of the Deposit Agreement, Sprout LLC is obligated to indemnify Banc in the PNC Action pursuant to the terms of the Master Repurchase Agreement. Specifically, Section 26 of the 2021 version of the Master Repurchase Agreement obligates Sprout LLC to indemnify and hold Banc harmless "from and against any and all claims, liabilities. . . actions, judgments [or] suits . . . of any kind whatsoever. . . relating to or arising out of the Repurchase Facility Documents or any documents contemplated by or referred to therein or in the transactions contemplated hereby or thereby." Ex. 5 at 54. As noted above, the Master Repurchase Agreement is one of the "Repurchase Facility Documents." Moreover, Sprout LLC's deposit account at Banc was established pursuant to the Master Repurchase Agreement. Accordingly, the indemnification provision in the Master Repurchase Agreement applies.

38. On October 19, 2022, Banc's counsel in the PNC Action sent an indemnification tender to Sprout, demanding that Sprout indemnify Banc in its defense of the PNC Action. To date, Sprout LLC has refused to do so.

39. Because of Sprout LLC's refusal to indemnify it, Banc has incurred, and will continue to incur, fees and expenses in its defense of the PNC Action.

## FIRST CAUSE OF ACTION

### Breach of Contract

### (As to Planet – Breach of Subservicing Agreement)

40. Banc realleges paragraphs 1 through 25, inclusive, and by this reference incorporates the same as though fully set forth herein.

41. Planet entered into a Subservicing Agreement with Sprout, as described herein. Planet and Sprout executed the Subservicing Agreement in exchange for valuable consideration.

42. The Subservicing Agreement expressly intended to benefit Banc through, *inter alia*, the following provisions:

- Section 2.4(d) requires Planet to maintain and carry all principal and interest payments "as 'trustee' for Investor." Ex. 2 at 14.

- Section 2.6 sets forth a series of additional servicing obligations Planet must fulfill, all of which are prefaced by noting that "Servicer shall be responsible for further safeguarding Investor's interest in each Mortgaged Property[.]" These obligations include, *inter alia*, securing vacant or abandoned property when a mortgagor ceases communicating with Planet (section 2.6(b)); "assisting Investor or Owner in undertaking appropriate action to preserve Investor's security" in the event of liens, probate sales, condemnation, eminent domain or other legal process that could impair Investor's security (section 2.6(c)); and disbursing insurance loss settlements (section 2.6(g)). *Id*. at 17-18.

- Section 2.16 states that, in the event title to a property securing a Note is acquired in foreclosure, "the deed or certificate of sale shall be taken in the name of Investor or its designee." *Id*. at 25.

43. The Subservicing Agreement covers the Ataide and Topps Notes.

44. Under the Subservicing Agreement, Planet is contractually obligated to remit to Banc the funds it has retained from the reconciliation of the Ataide Note refinance and the proceeds from the foreclosure of the Topps Note. Despite its obligations to remit the proceeds to Banc, and despite Banc's demands to remit the

proceeds, Planet has failed to do so.

45. As a direct and proximate result of Planet's breach of the Subservicing Agreement, Banc has suffered damages in the minimum amount of $1,507,995.71, which amount is not inclusive of attorneys' fees and costs, and any other accrued but unpaid fees and other expenses, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### Breach of Fiduciary Duty

### (As to Sprout and Planet)

46. Banc realleges paragraphs 1 through 25, inclusive, and by this reference incorporates the same as though fully set forth herein.

47. The Master Repurchase Agreement created an obligation on the part of Sprout to service loans for the benefit of Banc, thus making Sprout an agent of Banc for servicing purposes. Ex. 4 at 26-28; Ex. 5 at 28-29. The Master Repurchase Agreement gave Sprout the ability to delegate servicing obligations, which Sprout did—and which Planet willingly took on—via the Subservicing Agreement. Thus, Planet is a subagent of Banc, owing fiduciary duties to Banc. These fiduciary duties include the duty not to use Banc's property for the agent's own purposes or those of a third party. As applied here, these duties required Planet to remit funds owed to Banc, and required Sprout to ensure that funds owed to Banc were remitted to Banc.

48. Planet breached its fiduciary duty to remit to Banc the funds from the reconciliation of the Ataide Note refinance and the proceeds from the foreclosure of the Topps Note.

49. Sprout also breached its fiduciary duty to ensure that the funds and proceeds from the Notes were remitted to Banc.

50. Banc did not provide informed consent to Planet's or Sprout's conduct.

51. As a direct and proximate result of Planet's and Sprout's breach of their fiduciary duties, Banc has suffered damages in the minimum amount of $1,507,995.71,

which amount is not inclusive of attorneys' fees and costs, and any other accrued but unpaid fees and other expenses, in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### Violation of Business and Professions Code § 17200

### (As to Planet)

52. Banc realleges paragraphs 1 through 25, inclusive, and by this reference incorporates the same as though fully set forth herein.

53. California Business and Professions Code § 17200, *et seq*. (the "Unfair Competition Law") prohibits business practices that are unfair, unlawful, and/or fraudulent.

54. Planet violated California's Unfair Competition Law by breaching the Subservicing Agreement and its fiduciary duties to remit the proceeds from the liquidation of the Ataide and Topps Notes, as described above.  Planet continues to hold those proceeds, which belong to Banc.

55. Planet should be compelled to restore to Banc all monies it has obtained in violation of the Unfair Competition Law.

## FOURTH CAUSE OF ACTION

### Breach of Contract

### (As to Sprout – Breach of Master Repurchase Agreement)

56. Banc realleges paragraphs 1 through 31, inclusive, and by this reference incorporates the same as though fully set forth herein.

57. Banc entered into the 2018 and 2021 versions of the Master Repurchase Agreement with Sprout, as described herein.  Banc and Sprout executed each version of the Master Repurchase Agreement in exchange for valuable consideration.

58. Banc has performed all the terms and conditions required on its part to be performed pursuant to the Master Repurchase Agreement.

59. The Master Repurchase Agreement covers the Ataide and Topps Notes.

60. Sprout breached the Master Repurchase Agreement with respect to the Ataide and Topps Notes by failing to ensure that the funds and proceeds from the Notes were remitted to Banc. Specifically, Section 5(d) of the Master Repurchase Agreement obligates Sprout (as "Seller") to "account[] for all such Mortgage Loans, and the proceeds thereof and collections thereon, collecting all sums owing and to become owing thereon . . . including . . . to collect any sums or to enforce any rights with respect to security for the payment of any Mortgage Loans." Ex. 4 at 26. The Master Repurchase Agreement allowed Sprout to delegate its servicing obligations, but Section 5(d) still obligates Sprout to "cause the Servicer to hold or cause to be held all escrow funds collected by Seller and Servicer with respect to any Purchased Repo Assets in trust accounts and shall apply the same for the purposes for which such funds were collected. Seller shall and shall cause the Servicer to deposit all collections received by Servicer on the Purchased Repo Assets in an account to be designated by Buyer upon an Event of Default." *Id*. at 26-27. Of note, an "Event of Default" includes any breach of any covenant contained in the "Repurchase Facility Documents" that goes uncured for 20 days (*id.* at 45); the Master Repurchase Agreement is included among the Repurchase Facility Documents. *Id.* at 20.

61. Sprout further breached the Master Repurchase Agreement by failing timely to repay the deficiency on its warehouse line of credit resulting from purchase and sale transactions under the agreement. Specifically, Section 14 defines an "Event of Default" to include any failure by Sprout to timely repurchase any Purchased Repo Assets, or any failure to pay the full repurchase price when due. *See* Ex. 4 at 44 (Sections 14(b)-(c)).

62. As a direct and proximate result of Sprout's breaches of the Master Repurchase Agreement, Banc has suffered damages in the minimum amount of $3,551,486.23 (representing $1,507,995.71 in unpaid proceeds with respect to the Topps and Ataide Notes; and $2,043,490.52 in unpaid balances on Sprout's warehouse line with Banc). This amount is not inclusive of attorneys' fees and costs, and any other

accrued but unpaid fees and other expenses, in an amount to be proven at trial.

63. The Master Repurchase Agreement notes that in the "Event of Default," Sprout is liable to Banc for "the amount of all legal or other expenses. . . incurred by Buyer in connection with or as a result of an Event of Default." Ex. 4 at 47-48. Pursuant to the Master Repurchase Agreement, Banc is also entitled to recover all legal and other expenses incurred by Banc in connection with the breach of the Master Purchase Agreement.

## FIFTH CAUSE OF ACTION

### Breach of Contract

### (As to Sprout LLC – Breach of Master Repurchase Agreement and Deposit Agreement)

64. Banc realleges paragraphs 1 through 21 and 32 through 39, inclusive, and by this reference incorporates the same as though fully set forth herein.

65. Banc entered into the 2018 and 2021 versions of the Master Repurchase Agreement with Sprout LLC, as described herein. Banc and Sprout LLC executed each version of the Master Repurchase Agreement in exchange for valuable consideration.

66. Banc also entered into the Deposit Agreement with Sprout LLC, as described herein. Banc and Sprout LLC entered into the Deposit Agreement in exchange for valuable consideration.

67. Banc has performed all the terms and conditions required on its part to be performed pursuant to the Master Repurchase Agreement and the Deposit Agreement.

68. Sprout LLC breached the Master Repurchase Agreement and the Deposit Agreement by failing to indemnify Banc in its defense of the PNC Action. The "Conflicting Demands/Disputes" and "Limitation of Liability; Hold Harmless and Indemnity" provisions of the Deposit Agreement both obligate Sprout LLC to indemnify Banc with respect to any litigation addressing the control of, access to, or Sprout LLC's alleged misuse of, its deposit account with Banc. *See* Ex. 7. Likewise, Section 26 of the Master Repurchase Agreement obligates Sprout LLC to indemnify

and hold Banc harmless "from and against any and all claims, liabilities. . . actions, judgments [or] suits . . . of any kind whatsoever. . . relating to or arising out of the Repurchase Facility Documents or any documents contemplated by or referred to therein," which includes Sprout LLC's deposit account. Ex. 5 at 54. The PNC Action addresses the control of Sprout LLC's deposit account. Accordingly, Sprout LLC is obligated to indemnify Banc's defense of the PNC Action, but it has refused to do so.

69.  As a direct and proximate result of Sprout LLC's breaches of the Master Repurchase Agreement and the Deposit Agreement, Banc has suffered damages in an amount to be proven at trial. This amount is not inclusive of attorneys' fees and costs, and any other accrued but unpaid fees and other expenses, in an amount to be proven at trial.

70.  The Master Repurchase Agreement notes that in the "Event of Default," Sprout is liable to Banc for "the amount of all legal or other expenses. . . incurred by Buyer in connection with or as a result of an Event of Default." Ex. 4 at 47-48. Pursuant to the Master Repurchase Agreement, Banc is also entitled to recover all legal and other expenses incurred by Banc in connection with the breach of the Master Purchase Agreement.

## SIXTH CAUSE OF ACTION

### Declaratory Relief

### (As to Sprout LLC)

71.  Banc realleges paragraphs 17 through 21 and 32 through 39, inclusive, and by this reference incorporates the same as though fully set forth herein.

72.  An actual controversy has arisen and now exists between Banc and Sprout LLC about their respective rights under the Master Repurchase Agreement and Deposit Agreement, as detailed above.

73.  Banc contends that Sprout LLC is obligated to indemnify it with respect to the defense of, and any potential liability under, the PNC Action under the terms of the Master Repurchase Agreement and the Deposit Agreement.

16
COMPLAINT

74. Without relief from this Court, Banc will be subject to all the consequences of Sprout LLC's wrongful conduct.

75. Banc requests that the Court issue an order declaring Sprout LLC's conduct to be unlawful, and further that Sprout LLC is obliged to indemnify and defend Banc in the PNC Action.

## SEVENTH CAUSE OF ACTION

### Breach of Guaranty

### (As to Strauss)

76. Banc realleges paragraphs 1 through 75, inclusive, and by this reference incorporates the same as though fully set forth herein.

77. Banc has performed all the terms and conditions required on its part to be performed pursuant to the Master Repurchase Agreement and the Guaranty.

78. The Guaranty gives Banc a right against Strauss for any obligation of Sprout whether or not Banc has tried to seek redress against Sprout or any other party.

79. Pursuant to the express provisions of the Guaranty, Strauss covenanted and unconditionally guaranteed that he would pay Banc the funds from the reconciliation of the refinance of the Ataide Note, and the proceeds recovered from the foreclosure sale of the Topps Note; any unpaid obligations on Sprout's warehouse line with Banc; and costs Banc will incur in the defense of the PNC Action. By failing to pay such amounts, Strauss breached the Guaranty.

80. As a direct and proximate result of Strauss's breach of the Guaranty, Banc has suffered damages in the minimum amount of $3,551,486.23 (representing $1,507,995.71 in unpaid proceeds with respect to the Topps and Ataide Notes; and $2,043,490.52 in unpaid balances on Sprout's warehouse line with Banc), as well as an amount to be proven at trial with respect to the fees and costs Banc incurs in defense of the PNC Action. This amount is not inclusive of attorneys' fees and costs, and any other accrued but unpaid fees and other expenses, in an amount to be proven at trial.

81. The Master Repurchase Agreement also notes that in the "Event of

Default," Sprout is liable to Banc for "the amount of all legal or other expenses. . . incurred by Buyer in connection with or as a result of an Event of Default." Ex. 4 at 47-48. Pursuant to the express provisions of the Guaranty and the Master Repurchase Agreement, Strauss also covenanted and unconditionally guaranteed that he would pay "the amount of all legal or other expenses. . . incurred by Buyer in connection with or as a result of an Event of Default." *Id*. As such, Banc is also entitled to recover from Strauss all legal and other expenses incurred by Banc in connection with the breach of the Guaranty.

## **PRAYER FOR RELIEF**

WHEREFORE, Banc prays for judgment as follows:

1. That the Court enter judgment in favor of Banc and against the named Defendants on all claims asserted herein;

2. For compensatory damages against each Defendant according to proof;

3. For restitution of funds from Planet according to proof;

4. For a declaration of Banc's and Sprout LLC's rights under the Master Repurchase Agreement and Deposit Agreement;

5. Interest to the extent and at the rate permitted by the Subservicing Agreement, Master Purchase Agreement, Deposit Agreement, and the Guaranty, by law or equity;

//
//
//
//
//
//
//
//

6.    Banc's costs and expenses, including reasonable attorneys' fees, to the extent permitted under the Subservicing Agreement, Master Purchase Agreement, Deposit Agreement, and the Guaranty, by law or equity; and

7.    Such further relief as the Court may deem just and proper.

DATED: November 2, 2022        WINSTON & STRAWN LLP

By: */s/ David C. Scheper*
    David C. Scheper
    Gregory A. Ellis
    Attorneys for Plaintiff
    BANC OF CALIFORNIA, N.A.